Filed 5/31/17 Unmodified opinion attached

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of VALERIE and LOUIS G. | D070495 |
| VALERIE G., | |
| Appellant, | (Super. Ct. No. D558422) |
| v. | |
| LOUIS G., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Respondent. | |

THE COURT:

The petition for rehearing is denied.

It is ordered that the opinion filed herein on May 16, 2017, be modified as follows:

The parties' last name is replaced with "G." throughout the opinion.

There is no change in the judgment.

HALLER, Acting P. J.

Copies to:  All parties

Filed 5/16/17 Unmodified opinion

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of VALERIE and LOUIS GRISSOM. | D070495 |
| VALERIE GRISSOM, | |
| Appellant, | (Super. Ct. No. D558422) |
| v. | |
| LOUIS GRISSOM, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Paula S. Rosenstein, Judge.  Affirmed.

Dennis Temko and Stephen Temko for Appellant.

Judith Klein for Respondent.

As part of marital dissolution proceedings, appellant Valerie Grissom sought a domestic violence restraining order (DVRO) against her husband, respondent Louis Grissom, alleging he physically injured her during confrontations between them.  On appeal, Valerie contends the court erred in concluding that, because her injuries were

suffered during and as a result of physical confrontations she instigated, they did not constitute " 'abuse' " within the meaning of Family Code[1] section 6203, part of the Domestic Violence Prevention Act (§ 6200 et seq.).

Although section 6203 defines abuse to include an intentionally or recklessly caused bodily injury to the complainant, a finding of abuse is not mandated merely because the complainant shows he or she suffered an injury caused by the other party. Instead, fundamental and well-established principles allow a victim of physical aggression to employ reasonable force to defend his or her person or property against the aggressor, even when such reasonable force causes some bodily injury to the aggressor. The trial court properly recognized that a person who responds reasonably to an aggressor in this way does not commit abuse within the meaning of section 6203. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Valerie filed her petition for dissolution, requesting legal and physical custody of their son and seeking child support. At the same time, she filed an application for a DVRO, asking for a "Stay-Away" order protecting herself, her son, and her own mother from Louis. Valerie's application asserted, among other things, that Louis had inflicted

---

[1]    All statutory references are to the Family Code unless otherwise noted.

[2]    An appellate court is required to view the facts most favorably to the judgment (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1203), and an appellant's failure to similarly do so can be grounds treating any contentions regarding the sufficiency of the evidence as waived. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) Here we elect to examine the issues on the merits.

2

physical injuries on her.[3]  Louis filed written opposition to the DVRO and also requested

joint legal and physical custody.  He denied he was a violent person, instead asserting

that Valerie was mercurial and abusive toward him.  He supported his assertions by

recounting many instances in which Valerie initiated aggression against him and his

property.

At the evidentiary hearing on Valerie's application for a DVRO, the evidence

showed Valerie and Louis argued about many matters.  Valerie testified that during some

of the confrontations, she suffered physical injuries as the result of Louis physically

assaulting her.  She introduced photographs showing bruising to her arms, a bruise of her

thumb caused when he bit her, a scraped knee, and a bruised arm and chin.  She claimed

Louis was the person who initiated the physical aggression on each of the incidents

resulting in her injuries.

Louis testified he never hit Valerie and did not have an anger problem, but that

Valerie had struck him on several occasions.  He explained that the first series of

photographs introduced by Valerie, showing bruising to her arms and thumb as well as

the scraped knee, appeared to reflect injuries she sustained during an August 2015

confrontation.  The incident began when Valerie took Louis's work laptop and hid it from

him.  He described this as a "very typical tactic" she used to gain control when she was

---

[3]     In a supplemental filing, she submitted photographs depicting injuries she suffered
as the result of her altercations with Louis.  She also submitted a doctor's report dated
November 25, 2015, confirming she had suffered a bruise on her chin.

upset with him. She would take his cell phone or laptop and not reveal where she hid them until he yielded to her demands.

On this particular occasion, however, Louis was able to find its hiding place (in their bedroom) without her assistance. Valerie got angry when he located the laptop and blocked the bedroom doorway. When Louis tried to leave the room, she physically grappled with him trying to take the laptop from his hands. He held the laptop behind his back to keep her from getting it, and she wrapped her arms around him trying to gain control of his arms and wrest the laptop away from him. After 15 to 20 seconds of struggling proved unsuccessful, Valerie became even angrier. She spat in his face, then covered Louis's mouth and nose with her hand. Louis felt he could not release the laptop because he feared she might damage it if she gained control over it.[4] When his efforts to twist his head around to free his mouth and nose from her grip were unsuccessful, he "nipped" her thumb to free his breathing passage. He did not bite hard, but claimed he used the least amount of pressure necessary to free his airways.

As she continued struggling for the laptop, they fell onto the bed. Valerie hit her knee on the bed frame and she blamed him for the scraped knee, saying "Look at what you did." The fall and knee injury ended Valerie's struggle to get the laptop.

The last series of confrontations before Louis moved out of their home occurred in November 2015. An argument that had begun earlier the preceding day spilled over into

---

[4]    Louis testified that Valerie had damaged his electronic devices in the past. In one instance she placed his laptop on the wet floor of the shower, and at another time she smeared yogurt all over his laptop. On yet a third occasion she obtained the password for his Apple account and used it to erase the hard drive for his cell phone.

the early morning hours of November 24. Around 1:00 a.m., Louis was in the garage at his desk on the computer when Valerie entered and renewed the earlier argument. She snatched his cell phone from the desk, went around to the other side of the car, and began thumbing through the contents. Louis remained sitting at his desk and did not respond.

Valerie returned to the desk. When she got near enough, Louis was able to quickly reach out and cleanly snatch the cell phone from her hand. Valerie aggressively tried to regain control of the phone while Louis held it away from her grasp. He told her to stop, to get off him, that she was hurting him and she needed to stop, but she continued struggling for the phone, grabbing at his arms, wrists, shoulders, and forearms.

When he realized his repeated pleas for her to stop were not getting through to her, Louis decided he needed to remove himself from the situation by trying to wriggle free of her efforts to pin him. He was standing against the hood of the car and, when he pulled away and she pulled, she lost her grip and balance, and fell on her tailbone. The majority of the fall was absorbed by Valerie's tailbone, but she may also have hit her head on the car as she fell.

Valerie's fall ended the physical confrontation, and Louis went inside to lie down. But after Valerie came into the bedroom and resumed the argument, Louis decided it was time to leave. He left the house and spent the night in his car. He returned in the morning, but the parties did not talk much that day. The next day, however, Valerie came into the living room where Louis was sitting and announced she was going to the doctor. She said she planned to file a police report and seek a DVRO. Louis concluded the marriage was over and went to the bedroom to pack a bag.

5

Seeing Louis on his knees packing his clothing enraged Valerie. She assaulted Louis, reaching into his pocket and grabbing his cell phone. The parties again fought over the cell phone, and the struggle carried them into the kitchen. At that point Louis pinched a nerve and collapsed to his knees, ending his ability to resist. Valerie put his cell phone in the sink and began running water on it. Louis was able to get up, retrieve the cell phone and dry it off. He then went to get the bag of clothes; Valerie again tried to stop him by grabbing his cell phone. Knowing that the pinched nerve in his back prevented him from effectively resisting her, Louis called 911, and police responded to the call.

Valerie asserted the court should enter a DVRO because Louis intentionally or recklessly inflicted bodily injury on her.[5] Louis contended he did not commit abuse but was merely defending himself. The court ruled against Valerie, concluding that her own testimony showed the physical confrontations and resulting injuries were triggered by Valerie's aggression in taking Louis's electronic devices and her physical assaults on Louis in connection with taking his property. The court specifically rejected Valerie's argument that Louis used excessive force in responding to her actions and therefore denied the DVRO.

---

[5] Valerie also sought sole legal custody, as well as primary physical custody, of their minor child. A finding that Louis had perpetrated domestic violence against her would have strengthened her argument because such a finding would raise a presumption that an award of joint physical or legal custody to Louis would be detrimental to the minor's best interest. (See § 3044, subd. (a).)

6

DISCUSSION

A court may issue a DVRO to prevent a recurrence of domestic violence and to ensure a period of separation for the persons who are involved, provided an applicant shows "to the satisfaction of the court" that there has been "a past act or acts of abuse." (§ 6300.)  Abuse includes "intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury."[6]  (§ 6203, subd. (a)(1).)  Valerie asserts on appeal that as long as the evidence showed Louis either intentionally or recklessly caused the requisite bodily injury, it was an abuse of discretion to consider the circumstances that led to the infliction of that injury when evaluating her request for the DVRO.  Stripped of its gloss, her argument effectively urges us to reject any concept of reasonable self-defense in interpreting and applying the Domestic Violence Prevention Act.  The language of the statute coupled with long-standing and fundamental principles of responsibility and culpability preclude us from doing so.

As Valerie suggests, it is true that neither section 6300—which specifies when a DVRO can be issued—nor section 6203—which defines the term " 'abuse' "—expressly refers to self-defense.  But the concept is mentioned in section 6305, which limits the circumstances in which a court can impose *mutual* restraining orders.  In that regard, a

---

6    The remaining subdivisions of the statute permit a finding of abuse when the perpetrator has sexually assaulted the victim, or has placed the victim in reasonable apprehension of imminent serious bodily injury, or has engaged in any behavior that may be enjoined under section 6320.  (§ 6203, subd. (a)(2)-(4).)  However, Valerie did not claim below, and makes no argument on appeal, that anything other than subdivision (a)(1) applied to her request for a DVRO, and we do not further consider those remaining subparts.

7

mutual restraining order cannot be issued unless, among other things, the court "makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (*Id.*, subd. (a)(2).) The clear purpose of this requirement is to avoid restraining a party who is not culpable, and section 6305 reflects the Legislature's understanding that reasonable self-defense is a defense to a claim of abuse.

Section 6305 is consistent with a long-standing principle of California law that a party who inflicts injury while acting reasonably in self-defense is not culpable. In *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714 (*Calvillo-Silva*), disapproved on other grounds in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, footnote 19, our Supreme Court explained:

> "[A] person is privileged to use '[a]ny necessary force' to protect or defend oneself or one's property from 'wrongful injury.' [(Quoting Civil Code, § 50.)] The right to use force against another has long been limited by the condition that the force be no more than ' "that which reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending injury." ' [(Quoting *Vaughn v. Jones* (1948) 31 Cal.2d 586, 600.)] *When the amount of force used is justifiable under the circumstances, it is not willful* and the actor may escape liability for intentionally injurious conduct that is otherwise actionable. [Citation.] But if force is applied in excess of that which is justified, the actor remains subject to liability for the damages resulting from the excessive use of force. [Citations.] This is consonant with the general principle that *an actor is subject to liability for an intentionally injurious act only if his or her conduct 'is generally culpable and not justifiable under the circumstances.'* [(Quoting Rest.2d Torts, § 870.)] When an alleged act of self-defense or defense of property is at issue, the question of what force was reasonable and justified is peculiarly one for determination by the trier of fact." (*Id.* at pp. 730-731, italics added.)

Under California law, a person may use reasonable force to resist a battery even if such force causes bodily injury to the initial aggressor. (See, e.g., *People v. Myers* (1998) 61 Cal.App.4th 328, 334-335 [use of reasonable force to resist a battery even when actor has

8

no reason to believe he is about to suffer bodily injury].)  Moreover, an owner of property may employ reasonable force to protect property from damage (*Frickstad v. Medcraft* (1929) 100 Cal.App. 188, 193) or to retake property from a person who has obtained possession of it by force and is overtaken while carrying it away.  (See, e.g., *Riffel v. Letts* (1916) 31 Cal.App. 426, 428.)

In *J.J. v. M.F.* (2014) 223 Cal.App.4th 968, the court cited Civil Code section 50 and these general principles in conjunction with applying Family Code section 6305.  The opinion explains that because the petitioner acted in reasonable self-defense and not primarily as an aggressor, there was no substantial evidence to support issuance of that portion of a mutual restraining order that restrained her.  (*Id.* at p. 976.)

We may not disturb a court's ruling on a request for a DVRO absent an abuse of discretion.  (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.)  " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing trial court has no authority to substitute its decision for that of the trial court.' "  (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)  "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505.)

In its role as trier of fact, the trial court here concluded that in each instance where Louis applied force resulting in bodily injury to Valerie, he (1) was acting in response to her attempts to take his property by physical force, and (2) did not employ excessive force.  Those factual findings are fully supported by the evidence.  Moreover, what

9

degree of force was reasonable and justified under the circumstances was "peculiarly one for determination by the trier of fact" (*Calvillo-Silva, supra,* 19 Cal.4th at p. 731), and the court specifically rejected Valerie's claim Louis used excessive force. Accordingly, we conclude the trial court did not abuse its discretion in denying her application for a DVRO.

## DISPOSITION

The order is affirmed. Respondent is entitled to costs on appeal.

 

 

 

DATO, J.

WE CONCUR:

 

 

HALLER, Acting P. J.

 

 

AARON, J.