Filed 4/27/23  Sweezey v. Virelas CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MELISSA SWEEZEY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO VIRELAS,<br><br>Defendant and Appellant. | A162141<br><br>(Contra Costa County Super. Ct. No. MSD20-00658) |

Antonio Virelas appeals from the trial court's issuance of a one-year domestic violence protective order against him based on his disturbing the peace of his former girlfriend, Melissa Sweezey.  Virelas contends there is not sufficient evidence to support the court's ruling.  We disagree and affirm.

## I. BACKGROUND

In February 2020, Sweezey, then 50 years old, filed a request for a five-year domestic violence restraining order (DVRO) and a supporting declaration against Antonio Virelas, then 48 years old, in Contra Costa County Superior Court.  In her declaration, Sweezey stated that Virelas had lived with her for 13 years, relying on Sweezey for financial support, and that they had an 11-year-old daughter together.  Sweezey stated that Virelas "has been verbally abusive towards me since the beginning of our relationship and has recently in 2018 become sexually abusive towards me on a weekly basis.

1

[Virelas] is verbally abusive towards our daughter and consistently bullies her.  On several occasions, [Virelas] has threatened to take our daughter and leave without my consent."  Virelas "verbally abuses me calling me 'stupid fucking bitch,' " and "has been verbally abusive towards me for all thirteen years of our relationship . . . ."

In her declaration, Sweezey described a 2012 incident in which Virelas stood between her and her son after he overheard her talking about the son's impending visit: "[Virelas] raised his fist to hit me because he didn't want my son there.  [He] attempted to isolate me from my son as he was jealous of the attention I gave my son.  [He] told me my son was not welcome in the home and said that I should tell my son not to come and visit.  When my older daughter from a previous relationship arrived to visit [he] made her call my son and tell him that he was not welcome to visit."

Sweezey further stated, "During the 11 years of our relationship my daughter has had to deal with hearing [Virelas's] verbal abuse towards me and the derogatory names he calls me.  [Virelas] frequently uses foul language in front of our daughter and tells her that she is 'stupid' and many times she is so upset from his words that she runs to her room crying. . . . Our daughter is also emotionally struggling from [Virelas's] bullying and constant disapproval of her in everything she does."  Virelas allegedly made negative comments about their daughter's grades and basketball-playing, and threatened to cut their daughter's hands off if she did not complete her homework.

Also, Sweezey stated, in January 2020, she and Virelas argued, with Virelas "criticizing me saying that I do not put any effort into our relationship.  I told [Virelas] . . . that I did not want to be in a relationship with him.  I attempted to leave the room that we were in and [Virelas]

2

immediately became angry and wrapped his arms around my chest and dropped me on the couch in the bedroom and held me down and said that he wouldn't let me leave." Sweezey also stated that Virelas was sexually abusive towards her on a weekly basis and had been since 2018, raped her several times a week, including during the January 2020 incident, forcefully bit her, and tracked her movements electronically.

In January 2021, the trial court held a hearing regarding Sweezey's DVRO request. Sweezey testified that everything in her declaration was accurate and truthful, but did not present any significant additional evidence regarding the abuse and incidents described in her declaration that we have just discussed.

At the hearing, the parties presented testimony, by themselves and others, and evidence about numerous matters. This evidence includes Virelas's denials of allegations by Sweezey against him and his positive characterization of their relationship in the six months preceding Sweezey's filing; text messages between Virelas and Ms. Sweezey containing what Virelas contended were playful sexual exchanges; the lack of police and medical reports by Sweezey regarding the purported sexual and other assaults by Virelas; Virelas's conduct towards their daughter; the allegedly abusive conduct of an ex-boyfriend of Sweezey's, who had moved into Sweezey's home after Virelas left, towards Sweezey and her daughter; Virelas's retrieval of some of his things from the home he had shared with Sweezey and visits to neighbors, which Sweezey argued violated the court's temporary restraining order; Virelas's concerns that Sweezey was exposing their daughter to cigarette smoke, causing the daughter headaches; and their custody and visitation arrangements regarding their daughter.

3

The evidence presented at the hearing indicates Virelas had a difficult personality with which to contend. Sweezey testified that Virelas had been a stay-at-home father but that when their daughter got older, she asked him to get a job in order to help pay for the household expenses, since he was living with her for free. But Virelas only "[v]ery occasionally" worked, bringing in "a few thousand dollars" "maybe once a year." Also, Virelas testified that he had told their daughter that Sweezey was "cheating" on him—which Sweezey denied doing—and that he did not think this would have a negative impact on the daughter's impression of her mother.

There was also testimony from a former neighbor of Sweezey and Virelas, Heidi P., who took care of the daughter once a week, that she had observed certain "kind of red flags" regarding Virelas's treatment of the daughter. She cited the daughter's noticeable fear when she momentarily lost track of the family dog her father had told her to watch, the daughter's missing friends' birthday parties to practice go-karting with her father although she did not seem to want to practice, and Virelas's insistence that the daughter make a certain number of baskets before she could play with her friends.

Heidi P. also testified that Virelas had acted aggressively in his dealings with her. He tried repeatedly to persuade her to sign statements against Sweezey for his use in the DVRO proceedings even though she said she preferred to stay neutral out of her concern for the daughter. Numerous times, Virelas tried to show her evidence against Sweezey, some of which was pornographic, which actions Heidi P. found appalling and repulsive. He also insinuated he would call child protective services to come to Heidi P.'s house to check on the daughter if Heidi P. did not sign the statements.

4

At the conclusion of the hearing, the court made certain factual findings and ruled that it would issue a one-year DVRO against Virelas. First, the court found the third party witnesses who testified at the hearing to be credible for the most part. The court found that Sweezey and Virelas "both to some extent did exaggerate certain events and behaviors to promote their own positions," and found them "to be moderately credible but not beyond."

Next, the trial court found that Sweezey had not shown by a preponderance of the evidence that Virelas had raped her, emphasizing that there was insufficient evidence that Virelas "did not reasonably believe that she had consented to the act of intercourse." The court added that it still had a reasonable suspicion that the intercourse was accomplished by means of force or duress.

The court also found Sweezey did not prove by a preponderance of the evidence a number of her other allegations, they being that Virelas had bitten Sweezey; that he had tracked her movements electronically; that he had violated the temporary restraining order issued by the court; that he had threatened to cut off his daughter's hands if she did not finish her homework; and that he threatened to take his daughter and keep her away from Sweezey. However, the court found that Virelas "was a domineering father trying . . . to make his daughter . . . excel at anything that she had, sometimes maybe pushing a little far . . . ."

Further, as stated in its written DVRO, the trial court found that Sweezey *did* prove by a preponderance of the evidence that, first, Virelas "[r]epeatedly call[ed] her a 'stupid fucking bitch,' " adding at the hearing that "that domineering and abusive language did happen." The court found that, second, "[i]n January 2020, [Sweezey] attempted to leave a room in their

5

home, and [Virelas] physically prevented her from leaving the room." And the court found that, third, "[Virelas] has a domineering personality and made unreasonable efforts to control [Sweezey's] behavior."[1]

In its written DVRO, the trial court concluded that the first two of these allegations were "sufficient to meet the definition of *Disturbing the Peace of* [*Sweezey*] as defined in Family Code section 6320 and further described in the appellate decision *In re Marriage of Nadkarni* (2009) 173 [Cal.App.]4th 1483 [*Nadkarni*]." (Bold omitted.) At the hearing, it stated, "The combination of the domineering personality, the abusive language, and this brief false imprisonment, although I do find it to be very brief, when these things are combined, they are sufficient to meet the definition of disturbing the peace," and cited the same statute and case it referred to in its written DVRO.[2]

Virelas was ordered to move immediately out of the home he had shared with Sweezey, stay at least 100 yards away from her, her home, workplace and vehicle, and was prohibited from attacking, striking, threatening, assaulting or otherwise harassing her, contacting her directly or indirectly, or taking any actions to obtain her location, except that he was allowed to have brief and peaceful contact with Sweezey as required for court-

---

[1] The court actually stated that "Party #2," meaning Virelas, made unreasonable efforts to control "Party #2's" behavior, an obvious typographical error.

[2] Given the court's statement at the hearing, its statement in its written DVRO that the first two of its three factual findings were "sufficient" to establish that Virelas had disturbed Sweezey's peace cannot reasonably be interpreted to mean the court did not think its third finding provided further support for this conclusion. Rather, it appears the court viewed this finding as adding weight to its conclusion that Virelas had disturbed Sweezey's peace, even if the first two findings were sufficient by themselves to establish a disturbance of the peace.

6

ordered visitation with their daughter. Sweezey was given sole possession, care, and control of two pets. The court ordered that the daughter could not be present within 100 yards of Sweezey's ex-boyfriend and could not be exposed to second-hand smoke by either parent. Sweezey was given legal and physical custody of the daughter, and Virelas was allowed visitation on the first, third and fifth weekend of each month.

Virelas filed a timely notice of appeal.

## II. DISCUSSION

Virelas argues there was insufficient evidence to support the trial court's issuance of the DVRO, requiring reversal of the DVRO as an abuse of the trial court's discretion.

### A. *Standard of Review*

We review an order granting or denying a DVRO for abuse of discretion. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495 (*Nadkarni*).) " 'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) Accordingly, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

### B. *The Domestic Violence Prevention Act*

The court issued its DVRO pursuant to the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.). The purpose of the DVPA "is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of

7

the violence." (Fam. Code, § 6220.) "Abuse" under the DVPA includes, among other things, placing a person in "reasonable apprehension of imminent serious bodily injury" or any behavior that could be enjoined under section 6320, including "disturbing the peace of the other party." (§§ 6203, subd. (a)(3), (4), 6320, subd. (a).) " '[D]isturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party," whether directly or indirectly. (Fam. Code, § 6320, sub. (c).) "This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty." (*Ibid.*)

### C. *Analysis*

Virelas, focusing on the trial court's findings that he repeatedly used abusive language with Sweezey during their 13-year relationship and briefly prevented her from leaving a room in January 2020, argues that insufficient evidence supports these findings and, therefore, the trial court's issuance of the DVRO against him. Virelas contends the only supporting evidence is contained in Sweezey's DVRO request and the declaration attached to it. He argues her declaration statements, which refer to only one particular phrase used by him—" 'stupid fucking bitch' "—and only one incident in January 2020, are insufficient to support the issuance of the DVRO, particularly when the parties lived separately from one another and maintained peaceful contact in their communications after the court issued its temporary restraining order, indicating the risk of future abuse was minimal. He adds, "It should be troubling for any reviewing court how a Trial Court can hear live testimony from a witness (Ms. Sweez[e]y) and not find the witness credible enough to sustain the claims being made in their testimony and then find statements from the same witness that were merely written and not testified to credible."

8

Virelas's arguments are unpersuasive under our abuse of discretion standard of review. Sweezey's declaration statements, buttressed by evidence presented at the hearing, are sufficient evidence to support the DVRO because the trial court could reasonably conclude that Virelas had repeatedly acted to destroy Sweezey's mental and emotional calm and could well continue to do so in the future.

First of all, we do not take lightly the court's finding that Virelas verbally abused Sweezey *for 13 years*, regardless of the general nature of her declaration statements. Further, Sweezey identified a particular phrase Virelas used repeatedly—" 'stupid fucking bitch' "—that is as vile and demeaning as anything that can be said to a partner. It is reasonable to conclude that Virelas's repeated use of this derogatory phrase contributed significantly to his creation of a climate of mental and emotional agitation for Sweezey. That he used such verbal abuse for years in the presence of their daughter, upsetting the daughter, likely added to Sweezey's disquiet.

We also do not take lightly the trial court's finding that Virelas forcibly detained Sweezey in January 2020, when he held her down to prevent her from leaving a room, particularly because it occurred during a time when Virelas contended the couple were getting along well, suggesting his unawareness of his wrongful conduct's negative impact on Sweezey's mental and emotional state. It also is not the only episode in which he attempted to control Sweezey by the use of force: Sweezey recounted in her declaration that in 2012 he raised his fist to hit her in his attempt to prevent her from having her son visit their home.

Further, there is substantial evidence to support the trial court's *third* finding, that being that Virelas had "a domineering personality and made unreasonable efforts to control [Sweezey's] behavior." The evidence that

9

supports the court's first two findings provides substantial evidence of this third finding as well. Additionally, Virelas's other efforts to prevent Sweezey's son from visiting their home, such as having her older daughter contact the son, and his disregard of Sweezey's request that he get a job in order to help with household expenses instead of relying almost entirely on Sweezey's financial support, show his use of domineering ways to control the household, including Sweezey. Also, while the court concluded that Sweezey did not prove by a preponderance of the evidence that Virelas had repeatedly raped her, we reasonably infer from the court's continued reasonable suspicion that Virelas had accomplished intercourse with Sweezey by means of force or duress that it found this conduct disturbingly domineering as well. ~(2 RT 171)~

There is also substantial evidence that Virelas generally acted in a domineering fashion with a disregard of his negative impact on others, which further supports the reasonableness of the trial court's third finding and the conclusion that further abuse could well occur. Heidi P., a former neighbor and part-time care provider of Sweezey's and Virelas's daughter, testified about the multiple "red flags" that were raised for her by Virelas's repeated harsh and controlling treatment of the daughter. And Heidi P. recounted her own recent, disturbing interactions with Virelas, describing his persistent efforts to bully her into signing statements against Sweezey despite her telling him that she wanted to remain neutral for the daughter's sake. Virelas's efforts included showing Heidi P. pornographic material involving Sweezey and insinuating that he would call child protective services to Heidi's home when the daughter was there if she did not sign. Heidi P. testified that she was repulsed by some of his efforts but that he continued with them, from which the trial court could reasonably infer that he

10

disregarded the negative impact of his domineering ways and was unlikely to stop asserting them with others, including Sweezey. This lack of awareness also can be reasonably inferred from his hearing testimony that his telling his daughter that Sweezey was "cheating" on him—again, which Sweezey denied doing—did not have a negative impact on the daughter's impression of her mother.

The trial court could reasonably conclude from the totality of this evidence that Virelas had repeatedly acted in a domineering fashion towards Sweezey that disturbed her peace, and that his domineering conduct in general had not abated at the time of the hearing. In other words, there is substantial evidence that Virelas had engaged in "a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty." (Fam. Code, § 6320, subd. (c).) Case law indicating that an offending party need not engage in a pattern of physical violence to disturb a party's peace further supports our conclusion. (See *Nadkarni*, *supra*, 173 Cal.App.4th 1483, 1497–1499 [former husband's alleged accessing, reading, and publicly disclosing the content of ex-wife's confidential emails could constitute " 'disturbing the peace of the other party' " under the DVPA]; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1142–1143, 1147 [defendant's continually contacting plaintiff, including with communications containing sexual innuendos, after plaintiff terminated their relationship and asked him to stop contacting her and his arrival unannounced and uninvited outside her residence were substantial evidence that he disturbed her peace under the DVPA]; *Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 818–819, 821–822 [ex-boyfriend's acts of isolation, control, and threats were sufficient evidence that he destroyed ex-girlfriend's mental and emotional calm, constituting abuse under Family Code section 6320].)

11

Virelas's criticism of the trial court's first two findings as being based on Sweezey's declaration statements rather than live testimony, particularly when the court found some of her testimony insufficient to support certain of her claims, is unpersuasive. The trial court is statutorily authorized to issue a restraining order "based solely on the affidavit or testimony of the person requesting the restraining order." (Fam. Code, § 6300, subd. (a).) It found Sweezey to be moderately credible, and obviously found her credible regarding the matters upon which it based its abuse findings. Virelas gives us no reason to second-guess the court's credibility determinations, particularly when the trial court had the opportunity to observe the personal demeanor of Sweezey and Virelas, who both testified. (See, e.g., *People v. Lewis* (2001) 26 Cal.4th 334, 359 [reviewing court confronted with "a cold record without the trial court's benefit of observing firsthand the appearance and demeanor of the witness . . . must give proper deference" to a trial court's credibility finding].)

## III. DISPOSITION

The judgment is affirmed. Sweezey shall recover her costs of appeal.

STREETER, J.

WE CONCUR:

BROWN, P.J.
GOLDMAN, J.                                      *Sweezey v. Virelas* (A162141)

12