Filed 12/7/23  Toure v. Oxley CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JAMIL TOURE,<br><br>    Petitioner and Appellant,<br><br>    v.<br><br>JAMICE AMBER OXLEY,<br><br>    Respondent. | B317378<br><br>(Los Angeles County Super. Ct. No. 21STFL11506)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on November 7, 2023, is modified as follows:

On page 4, the first sentence in the first full paragraph is modified to insert the word "heard" between the words "visitation" and "on".

On page 8, the second sentence of the first paragraph, the word "associated" is deleted.

The petition for rehearing filed by Jamil Toure on November 21, 2023, is denied.

There is no change in judgment.

_____

MOOR, J.                                                    KIM, J.


I would grant rehearing.


_____

BAKER, Acting, P. J.

Filed 11/7/23  Toure v. Oxley CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JAMIL TOURE,<br><br>Petitioner and Appellant,<br><br>v.<br><br>JAMICE AMBER OXLEY,<br><br>Respondent. | B317378<br><br>(Los Angeles County Super. Ct. No. 21STFL11506) |

APPEAL from an order of the Superior Court of Los Angeles County, Lawrence Riff, Judge.  Affirmed.

Nadine Lewis, Esq., Nadine Lewis for Petitioner and Appellant.

Zarmi Law and David Zarmi for Respondent.

Appellant Jamil Toure (Father) appeals from an order denying his request for a restraining order under the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200 et seq.) against respondent Jamice Amber Oxley (Mother).[1]  On appeal, Toure contends:  (1) the trial court did not understand that accessing and deleting electronic data can constitute abuse under the DVPA; (2) the trial court abused its discretion by failing to consider the totality of the circumstances; and (3) the trial court erred by denying the restraining order on the ground that other remedies were available.  We find no abuse of discretion has been shown, and therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY[2]

### Conduct During Marriage

Mother and Father married on March 23, 2019.  The parties have a minor child, who was born in May 2019.  Discussions between Mother and Father repeatedly escalated into loud verbal fights, which disturbed their child.  In one incident, Father found the child had not been strapped into her car seat after a drive with Mother.  Mother takes antidepressant medications, and in August 2020, the child had one of Mother's pills in her mouth.  Father believed the substance was

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

[2] In accordance with the standard of review, the facts are stated in the light most favorable to the judgment.  (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11 (*Curcio*).)

Wellbutrin, while Mother believed it was the supplement L-Methylfolate. The parties attempted therapy.

Father took photos of open bottles of antidepressant medications and of pills left in areas accessible to the child, including several pills on the coffee table. He stored the photos on an application that was included in a family sharing plan for media.

Mother and Father allowed the daughter to watch cartoons on an iPad issued by Father's employer. The iPad was signed into the shared family account. On about October 5, 2021, while Mother was sitting next to her daughter, she noticed photos of her medication bottles and pills popping up on the iPad that her daughter was using. There were also photos of Mother with her face contorted. Mother did not understand why these photos were in the photo album on the shared family plan. She did not need to enter a password to view the photos on the iPad. She deleted the photos because they were embarrassing; she wanted to protect her reputation and did not want the photos to be seen. Mother also read Father's personal notes in an application, but did not delete them, and she took screenshots of communications between Father and his attorney that she found.

**Petition for Dissolution**

On October 6, 2021, without notifying Mother of his intentions, Father filed for dissolution. When he picked up his daughter from preschool that day, he took a video of the child

saying, "I don't want to go home.  I don't want to see mommy."
He stored the video on the shared family account.[3]

Father filed an ex parte request for custody and visitation
on October 7, 2021.  Although Father did not provide notice to
Mother, she appeared at the hearing.  The trial court granted
Father's request and ordered temporary legal and physical
custody of the child to Father with supervised visitation for
Mother.  While Mother was at the hearing, the child's maternal
grandmother (Grandmother) removed the child from her
preschool.

Later that day, Father went to the family home along with
a police officer to pick up his daughter pursuant to the court
order.  Father tried to enter the home, but the locks had been
changed.

Grandmother told Father to go away, the child would not
be going with him, and the court order was not legal.
Grandmother yelled at father, "We know what you did making
[the child] say those things."  This comment alerted Father that
Mother had accessed his photo account.

Mother was holding the child, but she wriggled away when
she saw Father.  Father picked her up.  A friend of Father's
joined them.  Mother, who was visibly upset, continually asked
Father to talk to her lawyer while trying to hand him the phone

---

[3] Father's evidence about the video of the child was
inconsistent.  In his declaration, he stated that he took the video
on October 6, 2021, after picking up the child from preschool.  In
the same declaration, he stated that he noticed on October 15,
2021, that Mother deleted videos from his account on October 5,
2021, including the video of the child saying that she did not
want to go home and see her mother.  The inconsistency with
respect to the timing is immaterial to the issues on appeal.

4

and waving it in his face, however, he declined to speak with the lawyer.  Eventually, Mother forcefully grabbed the child from Father's arms, stating "I don't care what the judge said."  She stormed off with the child.

Mother withheld the child, despite the court order, because she believed the order was obtained through lies and she did not know what would happen if she relinquished the child.  Father had a New York apartment and access to financial resources.

Rather than escalate a situation that might traumatize the child, Father left that day.  Father returned to the family home several times over multiple days with the police and a witness in order to retrieve the child, but received no response.

On October 13, 2021, the trial court issued another order directing Mother to immediately deliver the child to Father. Father attempted to see his daughter that same day, and again was met with no response.

Father noticed photos and videos that he had taken were missing from his account, which he suspected Mother had deleted.  On October 15, 2021, Father received a notification on his electronic device that photos had been added to a folder that belonged to Mother.  He clicked on the notification and found Mother had copied his photos and files, including documents that he was preparing for his attorney, to her own folder.  He did not know how Mother was accessing his materials.  He felt scared, confused, violated, and angry.  He tried to copy the photos back to his folder to preserve them as evidence, but as he was saving them, Mother deleted them from his folder.

## Request for Domestic Violence Restraining Order

On October 21, 2021, Father filed a request for domestic violence restraining order (DVRO) against Mother for the protection of himself and the child. A temporary restraining order was issued.

At an ex parte hearing on October 26, 2021, the parties agreed to exchange the child at the Inglewood Police Department later that day. The trial court also ordered the parties to meet and confer to enable Father to retrieve his property, but no discussions were held. Twenty days after the court ordered Mother to deliver the child to Father, Mother complied.

When Father brought the child to the family home for Mother's visitation, he found his property on the sidewalk in the back of the house. Upset and angry, he had to take time from work and make multiple trips to move his property. Father's work-issued iPad, which Mother had used to access Father's photos and documents, was returned to him.

## Hearing on Request for DVRO

A hearing was held on the request for a DVRO on November 18 and 29, 2021. During the proceeding, the trial court asked Father's attorney to explain Father's theory of the case related to deleting and transferring electronic data. Father's attorney stated that online stalking, destroying electronically stored evidence, hacking private material, and reading materials subject to the attorney-client privilege constituted abuse that supported a restraining order under the DVPA. The attorney

cited cases in which hacking into emails constituted domestic violence.

The trial court responded, "Right. But hacking into e-mails in and of itself is not abuse. Something has to flow from that; right? What flows from it?" The attorney explained that it was harassment and it disturbed Father's peace. The court asked if it destroyed Father's mental calm, and the attorney answered that it did. The court stated, "Could you establish that, please. [¶] And I just ask because . . . I look at this declaration and if everything in it is true, then [Mother] did some bad things that may have consequences for custody. There may be civil torts. There may be a lot of stuff that flows from this, but that's not why we're here. [¶] We're here about a domestic violence restraining order and whether this gentleman needs an order of protection. [¶] And as I know you know, not every annoyance, even very serious annoyances, is abuse. Some serious annoyances are serious annoyances for which there may be tort liability, but not [DVPA] equitable relief."

The court later questioned Mother about her conduct in deleting photos taken by Father. The court commented, "I'm not seeing domestic violence here. I'm seeing dispute. I'm seeing upset. I'm seeing aggravation. [¶] From what I've seen and read yet – if there was a hack into [Father's] sole and exclusive password protected account, then maybe there's something to that, but that's not what I'm hearing happened." Father and his attorney explained that it was not a shared photo album, but rather Mother used Father's work-issued iPad to access his separate applications containing his photos, his notes and journal, and his communications with his attorney.

In closing argument, Father's attorney argued the trial court should grant a restraining order based on online stalking, harassment, destroying personal property, and disturbing the peace. The attorney argued that dumping Father's belongings on the sidewalk on multiple occasions without any notice and failing to comply with the order to relinquish the child to Father violated the temporary restraining order and associated custody order. Mother's conduct of hacking into Father's private work and personal storage accounts, intentionally destroying his electronic files and reading privileged information, disturbed Father's calm and peace of mind. In addition, Mother's cavalier attitude about the baby's safety around supplements and medications put the child in danger. The child had witnessed loud, emotional arguments as well.

## Trial Court Ruling

The trial court denied the DVRO request. The court found that ultimately, Father failed to show by a preponderance of the evidence that Mother engaged in one or more proscribed acts under the DVPA. The trial court advised the parties that their child needed them to be able to co-parent. The court stated, "I am seriously concerned for this family and this little girl. I will tell you that the closest for me to [Father] carrying [his] burden of proof to prove abuse under the standard, under the DVPA[,] is Mother's apparent . . . disregard of a clear court order for nearly two weeks. [¶] And Mother will be answering for that in a contempt trial, I know. [¶] So this family has a serious problem with the contempt trial coming up. Has a serious problem with the custody trial coming up. But that's not this proceeding. This

8

proceeding asks the question whether a restraining order after hearing should issue based upon proof of one or more acts of abuse."

The trial court stated the following findings: "I believe Father felt belittled, bullied, and yelled at. I do not find by preponderance of the evidence that there was coercive control or a destruction of his mental calm."

"I do not find that Mother hacked into Father's technology. Mother [was] very forthright twice under oath, describing what she did with photographs and other materials that she deleted. [¶] And she will answer for that to the extent there's an answer to be had with respect to any adverse inference that arises in family or civil proceedings concerning that. Maybe there's no inference that will arise from that. But this is not [*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416 (*Evilsizor*)]. This is not [*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483 (*Nadkarni*)]. It is not a situation where Mother's hacked into Father's technology."

"I believe Mother's version of events, that she saw this minor child with access to a shared account and saw disturbing things that she deleted. I acknowledge[] that she probably deleted them in part because . . . they would be unhelpful in a custody dispute later on. And she will have to answer for that in a custody dispute later on. [¶] But I do not find that it was hacking or stalking within the meaning of the DVPA. I've already said, I completely understand how upset, angry, confused, if that's the right word, Father was by all of these events for the past several months, including . . . his property being left unceremoniously at the curb, which I think is very, very rude. And I don't understand why that occurred. But I

don't find that it's a violation of the [temporary restraining order].  [¶]  [And although] I think Father was very, very upset and angry about it, I don't think it destroyed his mental calm within the meaning of the DVPA."

The court found Mother's emails to the child's school were not harassment and did not disturb the child's peace, as there was no evidence the child knew anything about it.  The disparity in access to funds did not arise to the level of dominion or control over Father.  Father's answers and demeanor during his testimony led the court to conclude there was not an overbearing of his will, dominion, and loss of control.  Father was angry, but it did not cross the line into the area required for a DVRO.

The court added, "I commend Father for his responsible parenting in not permitting . . . [a] tug-of-war involving this minor.  [¶]  The current custody order, again based upon a no notice ex parte for which there has not been an evidentiary hearing, I do find adequately protects this minor until such time as it is made to be a permanent order or modified. . . .  The evidence does not lead me to conclude that this child should be a protected party under this DVRO.  I do not think this child suffered abuse at the hands of Mother."

Father filed a timely notice of appeal.  On November 1, 2022, Mother was found guilty of 21 counts of contempt for willfully disobeying court orders.[4]  Mother was given a suspended sentence of 42 hours of community service and advised that any future violation of court orders will result in a mandatory sentence to county jail.

_____

[4] Father's request for judicial notice filed with this court on April 4, 2023, which includes the November 1, 2022 order in the contempt proceedings, is granted.

10

## DISCUSSION

### Statutory Scheme and Standard of Review

A court is authorized to issue a protective order under the DVPA " ' " 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.' " ' " (*Curcio, supra,* 47 Cal.App.5th at p. 11.) "Abuse," as defined in section 6203, includes "any behavior that has been or could be enjoined pursuant to Section 6320." Under section 6320, a court may issue an ex parte order that enjoins a party from, alongst other things, " 'disturbing the peace of the other party,' " which "refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." This type of conduct can be committed by means including text messages, internet-connected devices, or "other electronic technologies." (§ 6320, subd. (c).) "The purpose of a domestic violence restraining order is not to punish past conduct, but to 'prevent acts of domestic violence [and] abuse' from occurring in the future. (§ 6220.)" (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 117.)

On appeal, we review the denial or grant of a request for a DVRO under the abuse of discretion standard. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.) Additionally, we "review the trial court's failure to consider evidence in issuing a DVRO for an abuse of discretion." (*Id.*) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably

11

be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) Therefore, we accept all evidence supporting the trial court's findings as true and resolve the conflict in favor of the judgment. (*Curcio, supra,* 47 Cal.App.5th at p. 12.) If substantial evidence supports the trial court's judgment, "reversal is not warranted even if facts exist that would support a contrary finding." (*Id.*)

" ' "If the [trial] court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.]" ' " (*In re Marriage of F.M. & M.M., supra,* 65 Cal.App.5th at p. 116.) However, "[e]rror on appeal must be affirmatively shown by the record, and '[w]e presume the trial court knew and properly applied the law absent evidence to the contrary.' [Citation.]" (*J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 644.)

## Accessing and Deleting Electronic Files

Father contends that the trial court erred by finding Mother's actions of accessing, downloading, and deleting Father's electronically stored data was not abuse under the DVPA. We disagree.

### A. Applicable Law

"Courts of Appeal have found conduct involving communications such as text messages, e-mail, and social media

12

constitutes abuse under the DVPA for disturbing the petitioner's peace." (*Curcio, supra,* 47 Cal.App.5th at p. 12.)

In *Nadkarni*, the appellate court concluded a wife's allegations that her husband destroyed her mental or emotional calm by accessing, reading, and publicly disclosing the contents of her confidential emails, causing her to suffer embarrassment and fear for her safety, sufficiently alleged abuse under the DVPA to support a request for a restraining order. (*Nadkarni, supra,* 173 Cal.App.4th at p. 1498.) The definition of abuse under the DVPA was not limited to the infliction of physical injury or assault. (*Id.* at p. 1496.) The court explained, "the plain meaning of the phrase 'disturbing the peace of the other party' in section 6320 may be properly understood as conduct that destroys the mental or emotional calm of the other party." (*Id.* at p.1497.) The wife's allegations that the conduct caused the destruction of her mental or emotional calm, if found to be true, *could* constitute disturbing her peace sufficient to show abuse under the DVPA. (*Id.* at pp.1498–1499)

In *Evilsizor*, the husband downloaded tens of thousands of text messages from his wife's cell phones, as well as her personal notes, and filed copies of her messages with the court. (*Evilsizor, supra,* 237 Cal.App.4th at p. 1420.) The wife alleged the husband "hacked into her Facebook account, changed her password, and rerouted the e-mail associated with her Facebook account to his own account," and "threatened to reveal publicly more text messages and e-mails for leverage in the dissolution proceedings." (*Id.* at p. 1421.) The trial court concluded that even if the husband legally obtained the information, an issue which the trial court did not resolve, the court was authorized to enjoin the disclosure of the information to protect the wife's peace

13

of mind.  (*Id.* at p. 1424.)  The appellate court affirmed the DVRO, concluding substantial evidence supported the trial court's findings.  (*Id.* at p. 1426.)

In addition, under section 6320, disturbing the peace of another party includes exercising coercive control, which is a pattern of behavior that unreasonably interferes with free will and personal liberty, such as "[c]ontrolling, regulating, or monitoring the other party's movements, communications, daily behavior, finances, economic resources, or access to services." (§ 6320, subd. (c)(3).)

## B.  The Trial Court's Understanding of the Law

Father contends the trial court failed to understand that accessing and deleting electronic data can constitute abuse under Family Code section 6320, even absent illegal access.  We conclude Father has not shown that the trial court misunderstood the law.

To support his contention that the trial court did not understand the applicable law, Father relies on the trial court's statement that "hacking into e-mails in and of itself is not abuse." Reviewing the statement in context, however, it is clear that the trial court was familiar with the applicable law, cited the relevant cases, and meant that hacking alone was not abuse, because the conduct must have destroyed Father's mental or emotional calm within the meaning of the DVPA.  Regardless of whether Mother accessed Father's files legally or illegally, if accessing electronic data does not illicit a disturbance of a party's peace within the meaning of the DVPA, then there can be no

14

equitable relief under the DVPA.  The trial court's analysis showed the court understood the applicable law.

Father also asserts the trial court failed to acknowledge that destroying electronic data, monitoring electronic communications, and electronic stalking can constitute abuse that supports issuance of a restraining order under the DVPA.  In support of this contention, however, Father simply recites his own evidence that these acts occurred.  On appeal, we presume the trial court understood and properly applied the law.  It was Father's burden to affirmatively show that the trial court did not understand the law.  In weighing the evidence, the court distinguished the facts of *Nadkarni* and *Evilsizor* from the facts of the present case, demonstrating the court's understanding of the applicable law.  The weight that the trial court gave the evidence does not demonstrate that the trial court did not understand the applicable law.

### C.  No Abuse of Discretion

Father also contends the trial court abused its discretion by failing to find that Mother's actions with respect to Father's electronic data constituted abuse under the DVPA.  We conclude that no abuse of discretion has been shown.

The trial court acknowledged Mother's bad conduct in accessing and deleting Father's electronic data.  The court weighed the evidence carefully in light of the relevant case law, and it found Mother's actions did not rise to the level of abuse under the DVPA; while Father was understandably upset and angry, his mental and emotional calm was not destroyed within the meaning of the DVPA.

15

The trial court's findings were supported by substantial evidence. Father provided his work-issued iPad, which was signed into Father's accounts with the shared media files, for his family's use. There were no legal proceedings between the parties when Mother noticed photos of medications and pills popping up on an iPad that her young daughter was viewing. Mother deleted photos and videos that embarrassed her, looked through other files and read Father's documents. Although Mother continued to use her access to Father's iPad to view, copy, and delete Father's electronic data for a few weeks after proceedings commenced, she returned the iPad with his belongings.

This case is distinguishable from *Evilsizor* and *Nadkarni,* cases in which one spouse accessed the other spouse's accounts without permission, publicly disclosed personal data, and a restraining order was necessary to prevent further disclosure of private information. (*Evilsizor, supra,* 237 Cal.App.4th at p. 1425; *Nadkarni, supra,* 173 Cal.App.4th at pp. 1496–497).

We also note that after Father filed for dissolution and the parties were involved in contentious custody proceedings, Father used his access to the shared family media account from his own device to click on a notification that Mother added photos to her personal folder. He claimed Mother's conduct in accessing, monitoring, and deleting his electronic data destroyed his mental and emotional calm, but he had no qualms about accessing and reviewing electronic data in her folder, which he understood belonged to her. At the time of the hearing, Father's iPad had been returned to him. Father, who had established the shared family plan, could clearly disable the plan without a restraining order. We find the trial court did not abuse its discretion by

16

concluding the parties' bad behavior with respect to electronic data did not rise to the level of abuse under the DVPA for which the protection of a restraining order was required to prevent future abuse.

In his briefs on appeal, Father asserts that the evidence supported issuing a restraining order, but we view the factual findings in the light most favorable to the trial court's ruling under the abuse of discretion standard, not whether the evidence could have supported a different ruling. None of the evidence found to be true constituted abuse for which the trial court was required to issue a restraining order under the DVPA as a matter of law. The record reflects that the trial court carefully weighed the evidence based on the applicable law, and as such, we find no abuse of discretion.

## Totality of the Circumstances

Father also contends the trial court's denial of a restraining order was an abuse of discretion considering the totality of the circumstances, specifically, the evidence that Mother withheld the child in violation of the court's orders, violently pulled the child from his arms, and engaged in arguments and verbal abuse. We conclude that the trial court carefully weighed the evidence, the court's findings are supported by substantial evidence, and no abuse of discretion has been shown.

Family Code section 6301, subdivision (c), requires the court to consider "the totality of the circumstances in determining whether to grant or deny a petition for relief." However, when two or more inferences can reasonably be deduced from the facts,

17

the reviewing court has no authority to substitute its decision. (*In re Marriage of G., supra*, 11 Cal.App.5th at p. 780.)

In this case, the trial court explained that it was a close decision, particularly due to Mother's withholding of the child in defiance of court orders. The court acknowledged Mother's bad conduct and Father's understandable frustration. These comments reveal that the court carefully weighed the evidence and considered the totality of the circumstances that Father had raised. Ultimately, the court concluded that Father's mental and emotional calm was not destroyed by Mother's actions. The court complimented Father's judgment to resist escalating the confrontation over custody on October 7, 2021, even though he had a court order and a police officer present to assist him, as well as Father's calm demeanor in the courtroom. We cannot say that the trial court acted rashly without considering the totality of the evidence. None of the evidence that Father relies upon required the trial court to issue a restraining order as a matter of law under the circumstances of this case. Father simply seeks to have this court reevaluate the weight of the evidence to reach a different conclusion, which is not the province of the appellate court.

## Other Available Remedies

Father contends the trial court denied his request for a DVRO because other remedies were available. We disagree with Father's characterization of the record. The trial court did not deny Father's request because other remedies were available. The court denied the request based on the court's finding that Mother's conduct did not support issuing a DVRO under the

18

circumstances of the case. The court explained that although the circumstances may allow for remedies in other proceedings, they failed to meet the requirements for a DVRO. In particular, Mother may be held accountable for destroying electronic evidence in the parties' custody dispute or for violating court orders in the contempt proceedings. Although the court noted that there may be other legal remedies available to Father, the trial court found there was no basis to issue a restraining order under the DVPA after carefully weighing the facts and finding that Mother's actions did not amount to a disturbance of Father's peace.

## DISPOSITION

The November 29, 2021 order denying the request for a restraining order is affirmed. Respondent Jamice Amber Oxley is awarded her costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

I concur:

KIM, J.

19

Jamil Toure v. Jamice Amber Oxley
B317378


BAKER, Acting P. J., Dissenting



The opinion for the court never engages with the key question: whether the mental and emotional calm of Jamil Toure (father) and his daughter were destroyed when Jamice Oxley (mother) forcefully pulled the daughter out of father's arms and then kept the daughter from having any contact with him for nearly three weeks—in violation of a court-issued custody order. (Fam. Code, § 6320, subd. (c).)  I believe there is strong evidence that father's and his daughter's peace was so disturbed (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 120, fn. 5) and that there existed a risk mother would engage in further actions disturbing their peace in the future.  I would accordingly hold the trial court abused its discretion in refusing to issue the requested restraining order.


                    BAKER, Acting P. J.