Filed 8/3/23  Kinfoussia v. Hamade CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| GUY MICHEL KINFOUSSIA, | B320550 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SQ007632) |
| v. | |
| BASMA HAMADE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rolf Michael Treu, Judge.  Affirmed as modified.

Law Offices of Rosenthal & Associates and Lisa F. Rosenthal for Defendant and Appellant.

Pamela Rae Tripp for Plaintiff and Respondent.

_____

A father subject to a French judgment governing custody of his daughter obtained a restraining order and child custody orders in California under the Domestic Violence Protection Act (DVPA; Fam. Code § 6200 et seq.)[1] based on California's temporary emergency jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA; § 3400 et seq.). Prior to the expiration of the five-year period of the California orders, at the father's request, the California court renewed the orders for another five years.  The mother appeals from the renewal order, contending that the trial court violated her constitutional right to due process by precluding live testimony and evidence.  We find no abuse of discretion has been shown concerning the presentation of evidence.  The mother further contends the trial court lacked subject matter jurisdiction under the UCCJEA to issue the original orders and the renewal order as to the child.  We conclude that the trial court had temporary emergency jurisdiction to issue the original orders, but the UCCJEA does not provide for the renewal of orders issued under the court's emergency jurisdiction.  We modify the renewal order to apply solely to the restraining order for the protection of Father, and as modified, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**Initial Custody Determination and Change in Home State**

Appellant Basma Hamade (Mother) and respondent Guy Michel Kinfoussia (Father) married in France on October 20,

---

[1] All further statutory references are to the Family Code, unless otherwise stated.

2007.  Shortly afterward, Father obtained a job in California and moved to the United States, while Mother remained in France.  Their daughter C.-A.K. was born in France in May 2008.

The parties divorced in France in 2010.  The divorce judgment provided that parental authority would be exercised jointly.  The child would reside with Mother, but Father had free access and accommodation rights.  Father agreed to pay monthly child support.

The child lived with Mother in France until she was seven years old, but often stayed with her maternal grandmother.  Mother's health deteriorated between 2013 and 2015.  Mother, grandmother, and the child decided Father should be entrusted with custody.

In September 2015, Mother provided Father with a handwritten note stating that she and Father had decided the child would live with Father in the United States until further notice, and as a result, Father would no longer pay alimony until their child returned to Mother's custody.

In October 2015, Mother and Father filed a joint application in the French court to modify the divorce judgment.  The parties requested the habitual residence of the child be fixed in the United States in California, with free access and accommodation rights to Mother upon notice to Father.  The parties agreed Father would no longer pay child support until such time as the child returned to France to live with Mother.  The reason provided for the request was that the child had expressed a desire to live with Father, and with Mother's consent, had changed her residence to live with Father for an indefinite period, unless the child expressed a desire to return to live with Mother in France.

In October 2015, Mother brought the child to the United States. She told Father that she could not care for the child due to her own mental health issues. Father agreed to care for her, enrolled her in school in California, and the child was happy.

On March 11, 2016, Mother appeared at the hearing in France on the joint application to modify the divorce judgment, but Father could not attend. Father wrote a letter to the French court attempting to give written authority to Mother to act on his behalf at the hearing. The French court issued a ruling that day dismissing the proceeding based on Father's failure to appear in person.[2]

---

[2] Mother's translation of the March 11, 2016 order, entitled "Order of Dismissal," states that the French court ruled, in pertinent part: "Whereas at the hearing [Father] did not appear nor was he represented, and [Mother] appeared alone; [¶] Whereas by letter received at the Clerk's Office on March 9, 2016, [Father] indicated that he could not attend the hearing of March 11, 2016; [¶] Whereas the court notice of November 4, 2015 indicated the mandatory presence of both parties at the hearing to get a court-certified agreement, the parties having completed a joint request form on October 1, 2016; [¶] Whereas it is therefore appropriate to declare the case abandoned; [¶] FOR THESE REASONS [¶] WE DECLARE the dismissal of the lawsuit; [¶] WE NOTE the termination of the proceedings and the relinquishment of jurisdiction; [¶] WE LEAVE the costs to be borne by the plaintiffs."

Father's translation of the March 11, 2016 court order, entitled "Waiver Order," states that the French court ruled, in pertinent part: "Whereas at the hearing [Father] has not presented or represented, that [Mother] presented herself; [¶] Whereas by letter received at the registry on March 9, 2016, [Father] indicated that he could not attend the hearing on March 11, 2016; [¶] Whereas the convocation on November 4,

A few months later, in July 2016, Mother filed a criminal complaint in France against Father for abduction of a minor by a parent outside the national territory.

On November 4, 2016, Mother traveled to Los Angeles. Father dropped off the child at Mother's hotel so they could visit. The child's smart watch had GPS tracking. After about ten minutes, Father noticed Mother and the child left the hotel, but he assumed they were going to dinner. Father grew concerned when he saw Mother and the child were at Los Angeles International Airport.

The child called Father from the airport. She said Mother had taken her to the airport with three strangers who claimed to be her uncles. During the conversation, one of the men grabbed her phone from her. Father immediately contacted the police. The child escaped from the men and notified an Air France agent that she was being abducted. The agent also called the police. Father and the police successfully intervened. The police recovered a passport that Mother caused to be issued for the child without Father's knowledge under the false pretense that the original passport had been lost.

---

2015 indicated the compulsory presence of the both parties to the hearing to confirm an agreement, parties who have completed a joint application form on October 1, 2016; [¶] Whereas it is therefore necessary to declare perfect the waiver of the affair; [¶] FOR THESE REASONS [¶] DECLARES perfect the waiver of the 1st Instance Introduced; [¶] FIND the extinguishment of the proceeding and the divestment of the Jurisdiction; [¶] LEAVE costs borne by applicants[.]"

## Domestic Violence Restraining Order

On November 18, 2016, Father filed a request in California for a domestic violence restraining order (DVRO) against Mother seeking protection for himself and protection for C.-A.K. as a family member in his household (case No. SQ007632). He noted that the parties had a divorce judgment in France and provided the case number. He asked for personal conduct orders enjoining Mother from harassing them and a stay-away order.

Father attached a request for child custody and visitation orders. He stated that the parties shared joint legal and physical custody under the French order, but he feared for his the child's safety and wanted sole legal and physical custody, with no visitation by Mother. The child had lived with Father in California since 2015. Father also filed a request for an order preventing Mother from traveling with their child without his permission or a court order. He declared that he did not give notice of the request for a DVRO to Mother, because he was afraid for his child's safety.

The trial court issued a temporary restraining order that day. The protected persons were Father and C.-A.K. The court issued a child custody and visitation order that found the child's country of habitual residence was the United States. The court concluded there was a risk that Mother would take the child out of California without Father's permission. The court ordered legal and physical custody to Father, with no visitation to Mother.

The court also ordered no travel with the child. Mother was required to notify the embassy or consulate of France of the temporary DVRO and provide proof of notification to the court

within 10 days.  The order stated that the court had jurisdiction to make child custody orders under the UCCJEA and The Hague Convention on the Civil Aspects of International Child Abduction (42 U.S.C. § 11601 et seq).

Mother was personally served in France with the request for a restraining order.  On December 12, 2016, a hearing was held on the request for a restraining order.[3]  Father was self-represented, but Mother did not appear.  Father testified, and he provided a copy of the French divorce judgment.  The court had also received a declaration filed by the child's maternal grandmother.

The court noted that an order made by the California court providing sole legal and physical custody to Father, with no visitation for Mother, would be a change from the French divorce judgment.  The court relied on the evidence that Father submitted stating the parties agreed for the child to come to California and live with Father, and Mother could visit her.  The court found the child had been living in California with Father for more than a year.

The court explained to Father that although custody could be awarded in connection with the DVRO, the order would have an expiration date.  The DVRO was considered a temporary order compared to the proceedings in France.  Father needed to register

---

[3] Father included the reporter's transcript for the December 12, 2016 hearing in his appendix on appeal.  In Mother's reply brief, she notes that the trial court did not have the benefit of this transcript in connection with the renewal proceeding, but she has no objection.  On the court's own motion, we take judicial notice of the reporter's transcript for the December 12, 2016 hearing filed in Father's appendix.

the French divorce decree in California in order to enforce the judgment and modify it.  Otherwise, Mother could go back to the French court and get an order to have the child returned to her custody based on the French judgment.

The court stated, "Since the order that I issued on November 18th included custody orders involving your daughter, I'm making those same orders now, and they will be part of this more permanent order."  The court entered a restraining order protecting Father and C.-A.K. for a period of five years.  Mother was enjoined from harassing or contacting them, and ordered to stay 100 yards away except brief, peaceful contact with Father and the child as required for court-ordered visitation in the French judgment.

The court also entered a child custody and visitation order giving sole legal and physical custody of C.-A.K. to Father, with no visitation to Mother.  The form for the order contained a pre-printed statement that the court found it had jurisdiction to make child custody orders under the UCCJEA, but the court did not check a box on the form to provide the child's country of habitual residence.

## Events Following DVRO

Mother violated the restraining order by sending unsolicited emails and text messages to the child and Father.  For example, in June 2017, Mother sent an email to Father stating, "Until my last breath I will not let you go [Father].  Note that in your head."

In July 2017, an arrest warrant was issued for Father pursuant to the criminal proceedings in France, charging him

with abducting a child from the person with custody and keeping the child outside of France.  In May 2018, police in Brazil escorted Father and the child from a plane and questioned them for hours based on the criminal proceedings in the French court.  Reentering the United States after a different trip with child in June 2018, Father was hand-cuffed, searched, and questioned for hours due to the warrant.

In March 2018, Mother sent an email to Father stating, "Continue playing deaf and continue to pretend you are [un]touchable.  You do not even have an idea about what is going to happen to you in very little time my poor.  [*sic*]  You make me sad.  I will have warned you enough.  Too late for you now.  Courage.  Really, courage."

Mother sent an email to the child stating, "Hello my daughter.  I give you big kisses and I remind you that I love you very much even though your daddy takes us away from each other but that has lasted enough.  It'll be finished soon.  That is a promise."  The child responded from Father's account that she wanted to stay with her father, and Mother would respect her wishes if Mother really wanted what was good for her.  Mother accused Father of sending a fake message and added, "You are ridiculous but it isn't important you will pay the high price and not with me.  [*sic*]"

Father appeared in the criminal case in France, where he provided testimony and supporting documentation.  In January 2020, the French criminal court found the parents had mutually agreed the child would leave France to join Father in the United States.  Father had a set address in California that Mother knew, so Mother was aware of the child's place of residence at all times.

Father was acquitted of all charges of wrongfully withholding the minor child.

**Request to Renew Restraining Order**

On November 24, 2021, in the California court, Father filed the request to renew the restraining order after hearing in case No. SQ007632, which is the order at issue on appeal. He asked the court to renew the DVRO and associated orders because Mother had violated the order and he was afraid Mother would abuse him in the future.

Father submitted his supporting declaration in lieu of personal testimony. He also provided the French divorce judgment, the joint application in the French court to modify the divorce judgment that was ultimately dismissed for failure to appear, the California court orders made in connection with the original domestic violence proceeding, the findings and judgment in the criminal proceedings in France, email messages from Mother with translations, email messages from the child to Mother expressing in detail that she wanted to live with Father, and the child's written work stating the most important lesson that she has learned is to distrust strangers, such as strangers claiming to be uncles.

Mother received notice of the request to renew the restraining order, but did not file a written response. The parties appeared with their attorneys for a hearing on the renewal request on December 15, 2021. No reporter's transcript of the proceedings has been included in the appellate record. The court found case number SQ007632 was related to another family law proceeding between the parties, Superior Court case number

10

SD035883.  The court designated case number SD035883 as the lead case, and transferred case number SQ007632 for all further proceedings.  By stipulation of the parties, the hearing was continued to February 7, 2022.

A hearing was held on February 7, 2022.  No minute order or reporter's transcript for the proceedings on February 7, 2022, have been included in the record on appeal.  At a subsequent hearing, however, the trial court read portions of the February 7, 2022 minute order into the record.  On February 7, 2022, on the court's own motion, the request to renew the restraining order was continued to April 8, 2022.  The minute order stated that subject matter jurisdiction remained at issue in the renewal proceeding.

In February 2022, Mother filed a brief challenging California's subject matter jurisdiction over the proceedings.  The brief was replete with statements of fact that had been adjudicated to be false by both the French court and the California court.

Father filed a responsive brief on the issue of subject matter jurisdiction arguing that the court had jurisdiction under various provisions of the UCCJEA.  He also argued that the French court's March 11, 2016 order relinquished jurisdiction over custody, even though the child had lived in the United States for less than six months, there was no dispute between the parties, and Father later told the California court that he was subject to a French custody order.  He attached several documents, along with translations.

He included an email from Mother dated September 18, 2015, in which she explained the steps that the parties needed to take to withdraw the child from her French school and enroll her

11

in school in the United States, as well as the legal documents they needed to file to give Father full custody. He included a handwritten note from Mother dated September 29, 2015, to the child's school in France, informing the school that the child would no longer be attending as of October 1, 2015, because she would be living in the United States.

Mother filed a reply. She attached the declaration of a French attorney in lieu of personal testimony, who explained the history of the legal proceedings in France. When Father did not appear for the hearing on March 11, 2016, the French court dismissed the filing without prejudice. Legally, there was no change of custody from the original orders contained in the divorce judgment. Contrary to Father's interpretation of the March 11, 2016 order, the French family court never relinquished any subject matter and territorial jurisdiction over the child and her parents. The attorney stated that Mother intended to obtain handwriting experts to establish that documents she purportedly wrote and signed were forgeries. Furthermore, she intended to obtain an expert to testify that her email and icloud accounts were hacked, and she denied sending the September 2015 email.

On April 8, 2022, a hearing was held on the request to renew the restraining order. Mother's attorney stated that a French attorney was ready to testify that France never relinquished jurisdiction over custody determinations and the California court never acquired it for purposes of issuing the original restraining order.

The trial court found that jurisdiction in California was appropriate. Mother had the opportunity to contest jurisdiction at the time of the original proceeding and chose not to avail herself of that. Father's concerns were legitimate and had a

reasonable basis. The court extended the restraining order for an additional five-year period.

Mother's attorney argued that Mother had a due process right to oppose the request to renew the restraining order, present testimony, and have a hearing on the issues. The court asked Mother for an offer of proof of the factual basis in opposition to the renewal request. Mother's counsel argued that the original allegations against Mother in 2016 and the allegations afterward were inaccurate. She asserted that Father had testified in the French criminal proceedings that the mutual agreement of the parties was temporary, that Mother never tried to kidnap the child, and that the child was going back to France. In addition, Father's requests for a change of custody had been denied by the French court. The child was not in danger from Mother, and there were no allegations of abuse to Father. Mother argued that the evidence would show, through French interpreters and witnesses in France who were prepared to testify, that the allegations forming the basis of the 2016 restraining order and afterward were inaccurate. Mother had a handwriting expert to testify that Father's evidence was based on forged documents.

After Mother's offer of proof, the trial court concluded that it had subject matter jurisdiction and granted the request to renew the restraining order for five years. On April 11, 2022, the court entered an order renewing the DVRO and associated orders for five years. Mother filed a timely notice of appeal from the renewal order.

On March 6, 2023, the trial court entered a stipulated agreement of the parties regarding custody and visitation under

the lead case number, SD035883.[4]  The agreement acknowledged the existing restraining order.  The parties agreed that except for certain visits described in the agreement with specific parameters that the parties agreed to observe, "the restraining order shall continue to remain in full force and effect.  Any further visit(s) not specified herein including any contact between [Mother] and [the child], outside of a therapeutic settling, shall be mutually agreed to in writing between the parties."  The agreement continued in relevant part: "i.  The Court has jurisdiction over the minor child because no other state has assumed jurisdiction, and [California] is an appropriate forum; [¶] ii.  The Country of habitual residence of the minor child is the United States of America."  The parties also agreed that Father has sole legal custody of the child.

## DISCUSSION

### Standard of Review

On appeal, we review the trial court's renewal of a DVRO under the abuse of discretion standard.  (*Rybolt v. Riley* (2018) 20 Cal.App.5th 864, 874–875.)  " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' "  (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780)  Whether the trial court, in exercising its discretion, applied the appropriate legal standard to an issue is subject to our independent review.  (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)  " ' "If the [trial] court's decision is influenced by an

---

[4] Father's request for judicial notice of the stipulation and order, which was filed with this court on April 3, 2023, is granted.

14

erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law.  [Citation.]" ' " (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 116.)

The trial court's finding that California has jurisdiction under the UCCJEA is reviewed for substantial evidence. (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1286.)  "When conducting a substantial evidence review, we must review the entire record in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the family court's findings.  [Citation.]" (*Id.* at pp. 286–1287.)  Statutory interpretation, however, is a question of law that we review de novo.  (*Ibid*.)

" 'Failure to comply with the procedural requirements of the UCCJEA is subject to harmless error analysis.' [Citation.] That is, the party challenging the ruling of the lower court 'must show it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 517.)

**Statutory Scheme Governing DVRO Proceedings**

The DVPA authorizes the court to issue a restraining order to prevent acts of domestic violence and abuse, if an affidavit or testimony shows to the court's satisfaction reasonable proof of a past act or acts of abuse.  (§ 6300, subd. (a).)  After notice and a hearing (§ 6340, subd. (a)), the court may issue an order enjoining

15

a party from, among other things, harassing, contacting, or disturbing the peace of another party (§ 6320, subd. (a)).

Personal conduct, stay-away, and residence exclusion orders issued after notice and a hearing may have a duration of up to five years. (§ 6345, subd. (a).) "These orders may be renewed, upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order." (§ 6345 subd. (a).) The duration of any other orders, however, including custody orders, is governed by the law related to those specific subjects. (§ 6345, subd. (b).)

If the restrained party contests the renewal of the DVRO, the petitioning party has the burden to show by a preponderance of the evidence that the party still has a reasonable apprehension of future abuse. (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 510.) The protected party does not need to introduce evidence of abusive conduct after the original order became effective because that would require the protected party to show the initial order was ineffectual in order to justify an extension. (*Id.* at pp. 510–511.) Evidence of additional acts of domestic violence or violations of the original restraining order may be relevant to whether the protected party has a reasonable fear of future abuse, but such evidence is not required to renew the restraining order. (*In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 539.) The trial court considers the evidence and the findings underlying the initial order in appraising the risk of future abuse, but principles of issue preclusion and estoppel preclude the restrained party from challenging the sufficiency of the evidence supporting the initial order. (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290.)

16

**Due Process for Renewal of Domestic Violence Restraining Order**

The sole issue that Mother raised in opposition to the request to renew the DVRO was her challenge to the trial court's subject matter jurisdiction. On appeal, Mother contends the trial court denied her due process rights by refusing to allow live testimony and the presentation of evidence at the hearing, as well as an opportunity to confront and cross-examine the witnesses against her. We disagree.

The trial court may issue a DVRO based solely on affidavits and has discretion to exclude oral testimony. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1499.) The authority to exclude oral testimony, however, does not override the due process requirement to provide a hearing under section 6340. (*In re Marriage of D.S. and A.S.* (2023) 87 Cal.App.5th 926, 935.) The trial court's exercise of its discretion to exclude oral testimony in connection with an application for a DVRO should be informed by the due process right to have a meaningful opportunity to be heard that is consistent with the nature of the case. (*Ibid*.)

In *In re Marriage of D.S. and A.S.*, *supra*, 87 Cal.App.5th at p. 935, the appellate court found the trial court failed to provide a meaningful hearing in the context of a request for a DVRO because the court did not make any inquiry of the parties, who were self-represented, or allow an opportunity for cross-examination on disputed issues. The appellate court concluded that the judicial officer's role in a DVRO hearing with self-represented litigants was different than an adversarial proceeding where the parties were represented by counsel; the

17

trial court in a domestic violence proceeding could not rely on pro. per. litigants to know the proper procedural steps, raise objections, ask relevant questions of witnesses, and otherwise protect their due process rights. (*Ibid.*)

Assuming that a restrained party has the same due process rights in connection with renewal of a DVRO, we conclude Mother had a meaningful opportunity to be heard in this case. Both Father and Mother submitted declarations and evidence to the trial court in advance of the hearing in lieu of live testimony. A hearing was held, the parties were represented by counsel, and the trial court inquired of the parties about several issues. The court allowed Mother's counsel to make an extensive offer of proof as to the evidence that Mother sought to present. The offer of proof concerned many facts and issues that were irrelevant or had been previously litigated in connection with the original DVRO, which Mother was precluded from contesting due to principles of issue preclusion and estoppel. The trial court did not abuse its discretion by denying oral testimony in the context of this case, and Mother was not deprived of her due process right to be heard on the material issue before the trial court.

## Subject Matter Jurisdiction

In her briefs on appeal, Mother did not raise any argument contesting renewal of the DVRO for the protection of Father. We do not consider contentions that Mother raised for the first time at oral argument. (*Palp, Inc. v. Williamsburg National Ins. Co.* (2011) 200 Cal.App.4th 282, 291.)

Mother contends, however, that the California court did not have subject matter jurisdiction under the UCCJEA to issue or

18

renew the DVRO and associated custody orders as to the child. We conclude the trial court had temporary emergency jurisdiction to issue the original orders, but did not have jurisdiction to renew the DVRO or custody order as to the child.

## A. UCCJEA Jurisdiction Generally

The UCCJEA provides the exclusive method for determining subject matter jurisdiction in child custody disputes involving other jurisdictions. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 310.)[5] The UCCJEA ensures that only one state has jurisdiction to make "child custody determinations," including orders for custody or visitation. (§ 3402, subd. (c); *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037 (*Fernandez-Abin*).) A "child custody proceeding" is any

---

[5] The issue of whether the UCCJEA confers "fundamental" subject matter jurisdiction is unsettled. (Compare *In re J.W.* (2020) 53 Cal.App.5th 347, 353, 364–367 [holding the UCCJEA does not govern fundamental jurisdiction] and *In re L.C.* (2023) 90 Cal.App.5th 728, 741–742 (conc. opn. of Moor, J.) with *In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 491–492, 495–496 [parties' stipulation for California court to modify North Carolina court's custody and support order was insufficient to establish modification jurisdiction under the UCCJEA] and *A.M. v. Superior Court, supra*, 63 Cal.App.5th at pp. 352, 354–355 [concluding mother who did not object to family court's continuing jurisdiction under section 3422 at the outset of the proceeding did not forfeit jurisdictional challenge on appeal].) We need not address in this case whether the UCCJEA confers fundamental subject-matter jurisdiction or simply contains mandatory jurisdictional rules because we conclude the trial court had authority to issue the original orders in this case.

proceeding in which custody and visitation are at issue with respect to a child, including a proceeding for protection from domestic violence. (§ 3402, subd. (d).) The UCCJEA serves as the basis for subject matter jurisdiction as to custody issues, while the DVPA is the procedural vehicle to invoke the subject matter jurisdiction authorized by the UCCJEA. (*Fernandez-Abin, supra,* 191 Cal.App.4th at p. 1038.) We "treat a foreign country as if it were a state of the United States[.]" (§ 3405, subd. (a).)

## B. Temporary Emergency Jurisdiction to Issue 2016 DVRO and Custody Orders

It is undisputed in this case that the initial child custody determination was made in France; the California court did not make the first child custody determination concerning the child. Other than the temporary emergency jurisdiction provisions of section 3424, a California court cannot modify a child custody determination made by a court of another state unless certain conditions are present. (§ 3423) Relevant to this case, the California court could not modify the French judgment unless California was the home state of the child under section 3421, subdivision (a)(1), and either the French court determined it no longer had exclusive, continuing jurisdiction under section 3422 or was an inconvenient forum, or one of the courts determined that the child and both of her parents were no longer residing in France. (See § 3423.) There was no evidence presented to the court in November 2016 that the French court found it was an inconvenient forum or no longer had jurisdiction, and since

20

Mother continued to reside in France, the conditions to modify the French child custody order were not met.

However, California courts have temporary emergency jurisdiction "if the child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . or parent of the child, is subjected to, or threatened with, mistreatment or abuse[.]"  (§ 3424, subd. (a).)

If there is a previous child custody determination that is entitled to be enforced, or a child custody proceeding in another state having jurisdiction under the UCCJEA, any order issued by the California court under its emergency jurisdiction "must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under [s]ections 3421 to 3423, inclusive. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires."  (§ 3424, subd. (c).)

In addition, when a California court that has been asked to make a child custody determination learns another state with jurisdiction under the UCCJEA made a child custody determination, section 3424, subdivision (d), requires the California court to "immediately communicate with the other court."  Similarly, if a California court exercising jurisdiction under the UCCJEA learns a child custody proceeding has been commenced in, or a child custody determination made by, a court of another state under that state's temporary emergency jurisdiction, the California court must "immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." (§ 3424, subd. (d).)

21

" '[E]ven though emergency jurisdiction is intended to be short term and limited, [a court] may continue to exercise its authority as long as the risk of harm creating the emergency is ongoing.' [Citation.]" (*Fernandez-Abin, supra,* 191 Cal.App.4th at p. 1041.)

We agree with Father that the California court had temporary emergency jurisdiction to issue the 2016 DVRO and the associated custody orders on the day that they were entered. Father and the child were present in California when the orders were made. The California court was aware of the French judgment governing custody. The court explained to Father that the California orders were temporary as compared to the French custody orders, as well as the steps that Father needed to take to modify the French custody orders. Mother's contentions concerning the 2016 orders are both untimely and moot. She did not challenge the length of the DVRO, its application to the child, the associated custody orders, the underlying facts, or the California court's failure to communicate directly with the French court at the time the orders were made or for almost five years thereafter. Because we conclude below that there was no jurisdiction under the UCCJEA to renew the order, the 2016 orders for the protection and custody of the child have expired, and any issue that Mother could have raised in a timely challenge concerning the duration, the facts supporting emergency jurisdiction, or the communication with the French court is moot.

### C. 2021 Renewal Order

We agree with Mother that the trial court did not have subject matter jurisdiction to renew the order as to the child.

As stated above, the DVPA authorizes renewal of personal conduct, stay-away, and residence exclusion orders. (§ 6345 subd. (a).) The statute explicitly states, however, that the duration of any other orders, including custody orders, is governed by the law related to those specific subjects. (§ 6345, subd. (b).)

Section 3424, subdivision (c), of the UCCJEA provides that any order issued pursuant to California court's temporary emergency jurisdiction "remains in effect until an order is obtained from the other state within the period specified or the period expires." The UCCJEA does not provide for renewal of an order made in a child custody proceeding under the court's temporary emergency jurisdiction. The renewal of the orders as to the child must be reversed.

On appeal, Father contends that the trial court had jurisdiction to renew the California orders, because after they were issued, the French criminal court confirmed Father properly had custody of the child. We disagree with Father's analysis. The finding of the French criminal court that Mother and Father mutually agreed the child would live with Father in the United States, thereby acquitting him of child abduction, was not equivalent to a French family court order finding that France no longer had exclusive, continuing jurisdiction or was an inconvenient forum. On this record, there is no evidence that the California court had jurisdiction in 2021 to modify the French custody determination under section 3423.

Nothing in this court's disposition, however, is intended to foreclose proceedings in California governing custody of the child that are consistent with the UCCJEA. At oral argument, Mother's attorney represented that Mother will not be seeking to gain primary custody of the child, who is over 15 years old and has lived in the United States for many years, but rather to establish a relationship with her through visitation.

**Motion to Dismiss the Appeal**

On April 3, 2023, Father filed a motion to dismiss Mother's appeal in this appellate court on the ground that the stipulated order entered by the trial court on March 6, 2023, made the issues on appeal moot. We disagree. The stipulated order states that except for the visitation described in the agreement, the restraining order shall continue to remain in full force and effect and Father has sole custody. The parties' agreement merely stated the existing circumstances under the restraining order and did not forfeit Mother's pending appeal of the jurisdictional issues underlying the restraining order. The parties' agreement also stated that the California court has jurisdiction because no other state has assumed jurisdiction. Jurisdiction cannot be conferred merely by the consent of the parties. (*Schneer v. Llaurado*, *supra*, 242 Cal.App.4th at p. 1287.) The evidence showed the French court assumed jurisdiction over custody in the divorce judgment. Moreover, the fact that the California court had jurisdiction to make a child custody determination in 2023 did not mean the court had jurisdiction to enter the renewal order in 2021. "Subject matter jurisdiction over a child custody dispute

24

either exists or does not exist at the time the petition is filed[.]" (*Ibid*.)  Father's motion to dismiss the appeal as moot is denied.

## DISPOSITION

The April 8, 2022 order is modified to apply solely to Guy Michel Kinfoussia as the protected person, striking the portions of the restraining order for the protection of C.-A.K. and associated custody orders, and as modified, the April 8, 2022 order is affirmed.  In the interests of justice, the parties are to bear their own costs.

NOT TO BE PUBLISHED.

MOOR, J.

We concur:

RUBIN, P. J.

BAKER, J.